UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL H.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CASE NO. C25-5600-BAT

**ORDER REVERSING AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Plaintiff appeals the denial of his application for Supplemental Security Income ("SSI"). He contends the ALJ harmfully erred by misevaluating the medical evidence, plaintiff's testimony, and the lay testimony, and determining plaintiff's impairments were non-severe. Dkt. 11. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). The Court declines plaintiff's request to order the claim be reassigned to a different ALJ, though this declination does not restrict the Appeals Council's discretion to do so.

## BACKGROUND

Plaintiff filed an application for SSI on April 22, 2022, alleging disability since October 31, 2019. Tr. 20. His application was denied initially and on reconsideration. Tr. 80–98. The ALJ conducted a June 2024 hearing and issued an August 2025 decision. Tr. 20–32, 48–79. The

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 1

1    ALJ determined plaintiff has not engaged in substantial gainful activity since the application date

2    of April 22, 2022. Tr. 22. The ALJ determined plaintiff has the following medically determinable

3    impairments: substance abuse disorder (methamphetamines, alcohol, and cannabis); unspecified

4    schizophrenia spectrum and other psychotic disorder; left kidney lesion and cyst; bilateral

5    varicoceles and hydroceles; coronary artery disease; lung nodules; dental caries; and right hip

6    pain. Tr. 23. The ALJ found, however, that none of these medically determinable impairments

7    constitute a severe impairment or combination of impairments that would significantly limit

8    plaintiff's ability to perform basic work-related activities for 12 consecutive months. Tr. 23–31.

9    The ALJ therefore concluded that plaintiff was not disabled. Tr. 31. As the Appeals Council

10   denied plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. Tr.

11   3–8.

12                                    **DISCUSSION**

13           The Commissioner's decision a claimant is not disabled will be upheld if the findings of

14   fact are supported by substantial evidence in the record as a whole and the proper legal standards

15   were applied. *Schneider v. Comm'r of the SSA*, 223 F.3d 968, 973 (9th Cir. 2000). The Court

16   finds the ALJ misevaluated the medical evidence, plaintiff's testimony, and lay testimony about

17   plaintiff's mental condition, and harmfully erred by determining none of the medically

18   determinable impairments constituted a severe impairment or combination of impairments. The

19   Court reverses and remands for further administrative proceedings on an open record, a new

20   hearing, and a new decision on all the issues presented. No aspect of the ALJ's decision is

21   affirmed. The Court declines to order this case to be heard on remand by a different ALJ. The

22   Court does not, however, limit the Appeals Council's discretion to remand to a different ALJ

23   should it choose to do so.

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 2

1    **1.  Medical Evidence**

2    Plaintiff contends the ALJ misevaluated the medical evidence, particularly with respect to

3    the non-exertional, mental limitations opined by Kimberly Wheeler, Ph.D., and Luci Carstens,

4    Ph.D., P.S., and with respect to plaintiff's competency to stand trial opined by Thomas

5    LeCompte, Psy.D., ABPP, and Alexander L. Patterson, Psy.D. Dkt. 11, at 2–7. The Court agrees

6    the ALJ misevaluated the medical evidence of plaintiff's mental limitations and reverses and

7    remands so that the ALJ may evaluate the entirety of the medical evidence on an open record.

8    **a.  Mental Evaluations by Drs. Wheeler and Carstens**

9    The ALJ considers the persuasiveness of medical opinions using five factors

10   (supportability, consistency, relationship with claimant, specialization, and other), but

11   supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2),

12   416.920c(b)(2), (c) (2017). The ALJ must explain in the decision how persuasive he or she finds

13   a medical opinion(s) and/or a prior administrative medical finding(s) based on these two factors.

14   20 C.F.R. §§ 404.1520c(b), 416.920c(b) (2017). The ALJ may, but is not required to, explain

15   how he or she considered the other remaining factors, unless the ALJ finds that two or more

16   medical opinions or prior administrative medical findings about the same issue are both equally

17   well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(3),

18   416.920c(b)(3) (2017). Nevertheless, an ALJ cannot reject a doctor's opinion as unsupported or

19   inconsistent without providing an explanation supported by substantial evidence. *Woods v.*

20   *Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

21   On April 7, 2022, Dr. Wheeler diagnosed plaintiff with methamphetamine induced

22   psychotic disorder; meth-use disorder, in early remission due to lack of funds; and rule-out

23   schizophrenia. Tr. 369. Although Dr. Wheeler opined the psychological effects on basic work

1    activities were primarily the result of a substance abuse disorder, she also found the effects

2    would persist following 60 days of sobriety. Tr. 369–70. Dr. Wheeler recommended a protective

3    payee, noting it "[i]s quite clear that he's stopped meth only because he's out of money." Tr.

4    370. Dr. Wheeler opined vocational training or services would not minimize or eliminate barriers

5    to employment. *Id.* Dr. Wheeler opined severe limitations on the basic work activities of

6    communicating and performing effectively in a work setting; completing a normal work day and

7    work week without interruptions from psychologically based symptoms; and setting realistic

8    goals and planning independently; marked limitations on understanding, remembering, and

9    persisting in tasks following detailed instructions; performing activities within a schedule,

10   maintaining regular attendance, and being punctual within customary tolerances without special

11   supervision; adapting to changes in a routine work setting; and maintaining appropriate behavior

12   in a work setting; and moderate limitations in four other domains. Tr. 369. Dr. Wheeler rated the

13   overall severity of all the diagnosed mental impairments as severe. *Id.*

14          The ALJ found Dr. Wheeler's opinion to be unpersuasive because (1) "Dr. Wheeler's

15   assessment consists of only checking boxes and makes no reference to any clinical findings in

16   support of her conclusions"; (2) "DSHS also uses different regulations when evaluating the

17   claimant's impairments"; (3) "Dr. Wheeler's exam findings including the claimant's cooperative

18   behavior, normal memory, normal fund of knowledge, articulate speech, and normal abstract

19   thought are inconsistent with her conclusions that the claimant had marked or severe

20   limitations"; and (4) plaintiff's exam from a few months earlier showed an ability to concentrate

21   and follow commands even with the presence of methamphetamines and cannabis in his system,

22   while subsequent exams noted plaintiff as alert and oriented, calm, and able to answer all

23

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 4

questions. Tr. 28–29. The Court finds the ALJ's characterization of Dr. Wheeler's evaluation to be inaccurate and unsupported by substantial evidence.

First, although Dr. Wheeler's examining opinion was filled out on the standard form used for DSHS psychological/psychiatric evaluations, there is no validity to discounting it on the basis of being checked boxes devoid of clinical support. Most of Dr. Wheeler's evaluation consists of narrative paragraphs that evaluate with specificity plaintiff's psychosocial history, medical and mental health treatment history, educational and work history, substance abuse history, activities of daily living, clinical findings regarding psychosis and substance abuse, specific diagnoses, and additional treatment recommendations. For example, Dr. Wheeler described the clinical findings regarding plaintiff's psychosis as follows:

> Highly organized, fluid delusion that a random man on a bus paid lots of money internationally to hire gang-stalkers to kill him. Delusion is fluid, rapidly incorporating conflicting information, which makes it resistant to reality testing. Delusion began "about a year ago, right after my wife left me." Hears "whistles and witchcraft. I can see who's a witch clearly in my eyes. They make an intention of me, and I hear [whistles], I can even see the air ripple, and it stabs me in my chest. Praying gets rid of it, some of the time." Can tell they're gang-stalkers, "I see them repeatedly, I know their faces now. They come by me again and again." "I need grief counseling, my life is filled with sadness and depression. I just want to work."

> While he says onset about a year ago, early memories now infused with delusion. Onset age 46, long past likelihood of being schizophrenia. "I don't feel I have schizophrenia, the others do." When given feedback about diagnosis, he says that someone told him he set the gang-stalking in motion, again providing word-for-word conversation from a long time ago, which is common when people are speaking from within psychosis. "He said he hired them from around the world." Relates he's seen people dump body parts at the side of the road. Cops told him he was having hallucination, he denied. Delusions are unusually well-developed for meth psychosis, which usually tends to be sour, grousing paranoid suspiciousness, not so elaborate and fluid. That said, still more likely than schizophrenia, given his age.

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 5

Tr. 368–69. Second, none of the ALJ's other reasons for discounting Dr. Wheeler's opinion on the basis of supportability or consistency address Dr. Wheeler's concerns about psychosis and substance use affecting plaintiff's capacity to engage in full-time work. That DSHS uses different regulations than does the SSA does not mean Dr. Wheeler's opinion is irrelevant, particularly since Dr. Wheeler opined plaintiff's observed mental symptoms rendered him unemployable while the ALJ concluded plaintiff has no functional impairments whatsoever. The benign mental status exam by Dr. Wheeler does not undermine the concerns about plaintiff's ongoing psychosis and substance use causing severe and marked mental limitations. Similarly, none of the medical notes that plaintiff was able to function despite use of methamphetamines and cannabis or showed calmness and ability to answer questions suggest that ongoing psychosis and substance would not interfere with the ability to work. Moreover, the ALJ did not indicate that a medical provider has ever suggested plaintiff's psychosis and substance abuse were either feigned or inconsequential such that, as the ALJ concluded, plaintiff has no mental limitations.

On April 12, 2022, Dr. Carstens reviewed Dr. Wheeler's evaluation and agreed with most of the limitations assessed by Dr. Wheeler, except Dr. Carstens opined severe limitations on asking simple questions or requesting assistance and maintaining appropriate behavior in a work setting, and marked limitations on communicating and performing effectively in a work setting. Tr. 477. Dr. Carstens adopted essentially the same diagnoses as Dr. Wheeler of brief psychotic disorder; meth-use disorder, early remission; and rule out schizophrenia. Tr. 478. Dr. Carstens noted although Dr. Wheeler had opined the duration of plaintiff's mental impairment was 12 months, "based on available clinical evidence regarding the client's mental health issues and their negative impact on the client's ability to be gainfully employed, a longer duration of a minimum of 24 months should be considered." Tr. 475–76. Dr. Carstens opined a severity rating

of 4 (marked) to plaintiff's psychosis, substance use, and his overall mental impairment.[1] Tr. 478. On January 12, 2024, Dr. Carstens reviewed reports from Dr. LeCompte and Dr. Patterson, as well as Dr. Wheeler's evaluation, and opined severe limitations on performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; communicating and performing effectively in a work setting; completing a normal work day and work week without interruptions from psychologically based symptoms; and setting realistic goals and planning independently; marked limitations on understanding, remembering, and persisting in tasks by following detailed instructions; performing routine tasks without special supervision; maintaining regular attendance, and being punctual within customary tolerances; and maintaining appropriate behavior in a work setting; and moderate limitations on four other domains. Tr. 477. Dr. Carstens shifted her diagnoses to schizophrenia spectrum or other psychotic disorder (primary) and substance use disorder. Tr. 482. Dr. Carstens assigned a severity rating of 5 (severe) to plaintiff's functional symptoms of delusions, memory deficits, and paranoia; as well as to plaintiff's overall mental impairment.[2] *Id.* Like Dr. Wheeler, Dr. Carstens opined that the effects on work activity were not due primarily to a substance abuse disorder. *Id.*

The ALJ rejected Dr. Carstens's April 2022 opinion for essentially the same reasons for rejecting Dr. Wheeler's opinion: (1) Dr. Carstens was using DSHS regulations rather than the SSA's; (2) she reviewed only a limited portion of the record and did not personally examine plaintiff; (3) and other evidence showed plaintiff more capable because he was alert, oriented,

---

[1] According to the DSHS, a severity rating of 4 means a marked impairment defined as follows: "There are very significant limits on your performance of one or more basic work-related activities." WAC 388-449-0035.

[2] According to the DSHS, a severity rating of 5 means a severe impairment defined as follows: "You are unable to perform basic work-related activities." WAC 388-449-0035.

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 7

1    calm, and able to answer all questions. As with the ALJ's rejection of Dr. Wheeler's opinion, the

2    ALJ did not cite substantial evidence that Dr. Carstens's April 2022 opinion was unsupported or

3    inconsistent. For example, the ALJ did not cite any record evidence that benign mental status

4    exams would contradict Dr. Carstens's concerns about a psychotic disorder and substance abuse

5    disorder.

6          The ALJ rejected Dr. Carstens's updated January 2024 opinion because Dr. Patterson's

7    report showed plaintiff to have better functioning than Dr. Carstens's opinion: "adequate hygiene

8    and grooming; adequate and socially appropriate eye contact; organized, logical, and goal

9    directed speech; adequate attention; stable and neutral mood; good memory; and cooperative and

10   personable behavior", as well as plaintiff "did not appear to be distracted by any sensory

11   disturbance." *Id.* (citing Tr. 467). The ALJ cited Dr. Patterson's opinion and noted "[a]lthough

12   the claimant did appear to have lingering delusional ideation, he was able to understand that they

13   were irrational, and he was found competent to proceed in his legal matters." *Id.* (citing Tr. 464,

14   468). Thus, the ALJ concluded "[t]his information is inconsistent with finding the claimant had

15   marked limitations and instead is consistent with non-severe mental limitations." *Id.* First, the

16   ALJ erroneously indicated Dr. Carstens's 2024 opinion referred to marked rather than severe

17   mental limitations. *See* Tr. 482. Second, it is an unreasonable to presume, as the ALJ did, that Dr.

18   Patterson's opinion was more supportive of no mental impairment than of marked (or severe)

19   impairments. Dr. Patterson stated plaintiff "has a schizophrenia-spectrum illness characterized by

20   persecutory, grandiose, and religious delusions" but "while he is likely still delusional to some-

21   degree, he appears to have the necessary insight and behavioral control to avoid discussing his

22   beliefs during the trial process and/or making them the basis for a defense." Tr. 470. Third, the

23   ALJ was unable to articulate how any of Dr. Patterson's findings were inconsistent with Dr.

1    Carstens's opinion that plaintiff's severe delusions and paranoia would interfere with his

2    capacity to work; and with respect to Dr. Patterson's observation that plaintiff "demonstrated

3    good memory for recent and remote events," it is unclear whether Dr. Carstens's opinion referred

4    to severe memory deficits within the context of significant delusions regarding the past in

5    addition to mild limitations in remembering very short and simple instructions and marked

6    limitations on remembering detailed instructions. *See* Tr. 481–82. It is notable Dr. Carstens

7    herself updated her original opinion to opine greater limitations after having fully reviewed Dr.

8    Patterson's competency report and did not suggest any inconsistency with Dr. Patterson's

9    conclusions.

10           The Court finds the ALJ failed to cite substantial evidence for discounting the medical

11    evaluations of Drs. Wheeler and Carstens.

12                    **b.  Competency Evaluations by Drs. LeCompte and Patterson**

13           In a competency evaluation dated September 11, 2023, Dr. LeCompte diagnosed plaintiff

14    with unspecified schizophrenia spectrum disorder and opined that plaintiff lacked the capacity to

15    understand the nature of the proceedings against him and to assist in his defense. Tr. 461. In an

16    October 12, 2023 competency evaluation, Dr. Patterson diagnosed plaintiff with unspecified

17    schizophrenia spectrum and other psychotic disorder but concluded that plaintiff was competent

18    to proceed. Tr. 463.

19           As an initial matter, the Commissioner argues the ALJ could not have harmfully erred by

20    misevaluating the opinions of Drs. LeCompte and Patterson because the evaluations did not

21    count as "medical opinions" under the regulations. Dkt. 14, at 11–12. Under the regulations, a

22    "medical opinion is a statement from a medical source about what you can still do despite your

23

impairment(s) and whether you have one or more impairment-related limitations or restrictions"

with respect to one's abilities to perform the physical or mental demands of work, to perform

other demands of work, or to adapt to environmental conditions. 20 C.F.R. § 416.913(a)(2).

According to the Commissioner, because Drs. LeCompte and Patterson were evaluating

plaintiff's competency to stand trial, their evaluations did not constitute medical opinions such

that "any argument that the ALJ somehow erred with respect to their evaluations is without

merit." Dkt. 14, at 11–12. This contention is specious. Whether or not the evaluations of Drs.

LeCompte and Patterson technically constituted "medical opinions" about the impact of

limitations on the ability to work as defined in 20 C.F.R. § 416.913(a)(2), and therefore were

subject to the mandatory articulation requirements of 20 C.F.R. § 416.920c(b), those evaluations

were unquestionably "other medical evidence" relevant to an inquiry about plaintiff's mental

limitations and how those limitations could affect his ability to work, 20 C.F.R. § 416.913(a)(3).

Contrary to the Commissioner's assertion, the ALJ could not reasonably assess plaintiff's

unspecified schizophrenia spectrum and other psychotic disorder without meaningfully assessing

the opinions of two psychologists who examined plaintiff, made that diagnosis, and detailed

plaintiff's delusions. An ALJ is required to evaluate the medical evidence and ignoring or

misconstruing relevant medical evidence is harmful error.

      The ALJ found Dr. LeCompte's opinion to be unpersuasive because (1) it related to legal

competency rather than disability pursuant to Social Security regulations; (2) it was inconsistent

with other evidence of record, including the opinion of Dr. Patterson one month later that

claimant was competent to proceed; and (3) it was not supported by his own exam findings

where plaintiff was able to generally maintain attention and answer all questions asked of him.

Tr. 29. These reasons are unsupported by substantial evidence. First, that Dr. LeCompte's

1    opinion related to legal competency rather than disability does not invalidate his clinical

2    observations or his diagnosis. The competency opinion was based on two major considerations:

3    "(1) the *nature and severity of the defendant's current symptoms of a psychiatric illness* and

4    (2) *the influence of current psychiatric symptoms on the defendant's functional capacities* that

5    are possibly relevant to performance as a defendant in criminal proceedings." Tr. 472 (emphasis

6    added). That Dr. LeCompte found plaintiff was too delusional to meaningfully assist in his own

7    defense and recommended legal competency could most effectively by restored by granting

8    "judicial authority to medicate [plaintiff] against his will if the treating psychiatrist deems it

9    clinically necessary." Tr. 473. Such concerns about plaintiff's basic functionality without forced

10   medication cannot be dismissed summarily because they related to legal competency rather than

11   to capacity to work. Second, while it was reasonable for the ALJ to determine Dr. Patterson's

12   evaluation to be more persuasive than Dr. LeCompte's, the ALJ did not adequately address the

13   aspects in which Dr. Patterson's opinion also supported Dr. LeCompte's observations about

14   plaintiff's delusions and the diagnosis. Third, as when evaluating the opinions of Drs. Wheeler

15   and Carstens, the ALJ did not explain why plaintiff's ability to maintain attention and answer

16   questions is inconsistent with the observations by Drs. Wheeler, Carstens, LeCompte, and

17   Patterson that plaintiff suffered from delusions that interfered with his ability to function.

18        The ALJ found Dr. Patterson's competency determination to be persuasive because it was

19   "supported by his exam findings that show the claimant was cooperative, attentive, calm, and

20   able to understand that his delusional thoughts were irrational (Ex. 11F). As such, this evidence

21   is consistent with finding that the claimant does not have a severe mental impairment." Tr. 463

22   (citing Tr. 461–474). This conclusion is unsupported by any medical evidence, including Dr.

23   Patterson's opinion. As the ALJ noted, Dr. Patterson was examining functionality related to

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 11

competency to stand trial rather than ability to work such that the clinical observations are of

primary relevance. Tr. 29. Dr. Patterson noted plaintiff was "motivated to be found competent

and capable of suppressing his symptoms." Tr. 470. Nonetheless, although plaintiff no longer

spontaneously verbalized delusional ideation and denied maintaining the beliefs he had stated to

Dr. LeCompte, plaintiff "presented with lingering delusions of a persecutory and grandiose

nature":

> [H]e alluded to vague, irrational ideas about individuals in the
> community using "hypnosis" to make him appear mentally ill. He
> also referenced being poisoned by his ex-wife with berries, and the
> statements he made related to his military service seemed
> improbable and likely delusional. Overall, [plaintiff's] presentation
> indicated the presence of some ongoing, delusional beliefs which
> he understood were perceived by others as irrational and he
> therefore consciously minimized or denied during conversation.

Tr. 467–68. The ALJ concluded Dr. Patterson's determination plaintiff was competent to stand

trial despite being delusional meant that plaintiff suffered from no functional limitations based

on the diagnosis of unspecified schizophrenia spectrum and other psychotic disorder. That is an

unreasonable inference unsupported by the medical evidence. *See Nguyen v. Chater*, 100 F.3d

1462, 1465 (9th Cir. 1996) ("Where the purported existence of an inconsistency is squarely

contradicted by the record, it may not serve as the basis for the rejection of an examining

physician's conclusions.").

        The Court finds the ALJ failed to cite substantial evidence for discounting the medical

evaluations of Drs. LeCompte and Patterson suggesting greater functional limitations than

assessed in the decision.

2. **Plaintiff's Testimony**

Plaintiff contends the ALJ failed to cite specific, clear and convincing reasons for discounting plaintiff's testimony about the severity of his impairments. *See Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014). The Court agrees with respect to his mental limitations.

The ALJ stated: "After considering the evidence of the record, the undersigned finds that the claimant's medically determinable impairments could not reasonably be expected to produce the alleged symptoms." Tr. 24. As plaintiff notes, this conclusion is clearly erroneous. The ALJ did not explain how plaintiff's asserted symptoms could not reasonably follow from suffering from substance abuse disorder, unspecified schizophrenia spectrum and other psychotic disorder, left kidney lesion and cyst, bilateral varicoceles and hydroceles, coronary artery disease, lung nodules, dental caries, and right hip pain. Tr. 23. The ALJ thus was required to cite specific, clear and convincing reasons for discounting plaintiff's testimony about the severity of his impairments.

As discussed earlier, the ALJ misevaluated the medical evidence and there is extensive support for plaintiff's testimony about his mental impairments from the opinions of Drs. Wheeler, Carstens, LeCompte, and Patterson. The misevaluation of the medical evidence consistent with plaintiff's testimony alone demonstrates the ALJ harmfully erred. The ALJ suggests such "varying diagnoses for his mental health complaints within the record" should be disregarded because plaintiff "has submitted almost no evidence of treatment during the period at issue." Tr. 24. This does not, however, constitute a specific, clear and convincing reason for discounting plaintiff's testimony, particularly because plaintiff's mental impairments involve significant delusions as well as spells of homelessness during which his access to healthcare involved sporadic visits to the emergency room complaining of paranoia and delusions. *See, e.g.*,

Tr. 24 (citing Tr. 379). There are clear indications that plaintiff's mental health symptoms have limited his ability to access medical treatment. *See, e.g.*, Tr. 370 (Dr. Wheeler noting: "Poor insight into his condition, will need to be handled deftly in terms of getting him into treatment. . . . Progress is expected to be slow, with setbacks[.]"); *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989), for the proposition "[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.").

Because the Court is reversing and remanding for a new hearing and decision on an open record, it declines to address in detail the ALJ's reasoning on plaintiff's testimony regarding his physical limitations. The Court notes, however, that the ALJ discounted plaintiff's testimony in-part because plaintiff stated that he spent most of his time riding the bus when he was homeless, indicating a greater ability to sit than alleged; and plaintiff testified he could obtain ready-to-eat meals for himself from the grocery stores and could drive for about 20 minutes at a time. Tr. 24. That plaintiff testified to spending most of his time on the bus does not demonstrate his capacity to sit consistently without further evidence that the manner in which he rode the bus equated with sitting for significant periods of time without need to lie down, stand, or move around. Moreover, the Ninth Circuit has noted that "[s]everal courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

The Court finds the ALJ failed to support the decision to discount plaintiff's testimony about his mental limitations with substantial evidence. The Court does not, however, affirm any aspect of the ALJ's decision. On remand, the ALJ should address anew all aspects of plaintiff's testimony.

### 3.  Lay Testimony

For the reasons stated with respect to the ALJ's evaluation of the medical evidence and plaintiff's testimony, the Court finds the ALJ harmfully failed to support with substantial evidence the rejection of the lay testimony by field officer T. Nguyen, plaintiff's mother, and plaintiff's aunt regarding mental limitations. As with respect to plaintiff's testimony, the Court declines to address in detail the ALJ's handling of the lay testimony regarding plaintiff's physical limitations because no aspect of the decision is affirmed and on remand the lay testimony should be addressed anew on an open record.

### 4.  Severe Impairments

At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe if it "significantly limits" an individual's "ability to do basic work activities." 20 C.F.R. §404.1520(c). In *Smolen*, the Ninth Circuit explained the scope of a step two inquiry:

> Important here, at the step two inquiry, is the requirement that the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe. See 42 U.S.C. § 423(d)(2)(B) (Supp. III 1991); Social Security Ruling 868 ("SSR 86–8"). See also SSR 85–28. Also, he is required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity. SSR 88–13; 20 C.F.R. § 404.1529(d)(2) (effective 11/14/91) (adopting SSR 88–13). Finally, the step-two inquiry is a de minimis screening device to dispose of groundless claims. *Bowen v. Yuckert*, 482 U.S. at 153–54, 107 S. Ct. at 2297–98. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85–28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir.1988) (adopting SSR 85–28).

*Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Thus, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting SSR 85-28).

In this case, although the ALJ acknowledged plaintiff suffered from a number of medically determinable impairments, he concluded that none of those impairments, considered singly or in combination, resulted in an impairment on basic work activities, and plaintiff's mental impairments resulted in no limitations to the four broad functional areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. Tr. 26. In doing so, the ALJ rejected substantial and undisputed evidence of delusional psychosis and substance abuse that rendered him unemployable in the opinions of Drs. Wheeler and Carstens, and rendered him legally incompetent in the opinion of Dr. LeCompte. Having improperly rejected the consistency of the testimony of plaintiff and lay witnesses regarding the impact of plaintiff's mental impairments, the ALJ also failed to consider his subjective symptoms in making the severity determination. Furthermore, the ALJ's conclusion of no severe medical impairment or combination of impairments was not supported by clearly established medical evidence. No rational trier of fact applying step two as a de minimis screening device would conclude plaintiff has presented a groundless claim.

**5.  Plaintiff's Request for a Different ALJ**

Plaintiff asks this case be remanded for a new hearing and decision before a different ALJ because ALJ Erickson appears to be prejudiced against plaintiff's attorney and against claimants who are represented by plaintiff's attorney. Dkt. 11, at 18. As support, plaintiff's

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 16

1  counsel submits self-collected statistics that show claimants who are represented by other

2  attorneys are 11 times more likely to receive a fully favorable decision. Dkt. 12, at 1–2.

3         The Court declines to order remand to a new ALJ based on counsel's statistics regarding

4  the lower success rate of claimants represented by plaintiff's attorney than claimants in general.

5  "ALJs and other similar quasi-judicial administrative officers are presumed to be unbiased. This

6  presumption can be rebutted by a showing of conflict of interest or some other specific reason for

7  disqualification." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citation and quotation

8  marks omitted). Plaintiff has shown neither a conflict of interest nor another specific reason for

9  disqualifying ALJ Erickson. The Court will not presume the ALJ's bias based on the statistical

10  success rate of claimants represented by plaintiff's counsel (whether favorable or unfavorable),

11  rather than on a case-by-case analysis. *See, e.g.*, *Cope v. Colvin*, 2016 WL 6439940, at *9 (W.D.

12  Wash. 2016) (collecting cases in which statistics were found to be unhelpful in the bias inquiry

13  and finding that, were statistics used, plaintiff had not shown them to be random, unbiased, and

14  statistically significant). Moreover, counsel's presentation of his own unsuccessful cases as an

15  example of bias is missing the most important data: whether those clients actually had

16  meritorious claims.

17         The Court declines plaintiff's request to order a remand to a new ALJ. Nonetheless, the

18  Court does not restrict the Appeals Council's discretion to remand to a different ALJ should it

19  choose to do so.

20  <center>**CONCLUSION**</center>

21         For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is

22  **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

23

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 17

1    On remand, the ALJ shall open the record for supplementation, hold a new hearing, and issue a

2    new decision. No aspect of the ALJ's decision has been affirmed.

3           DATED this 17th day of December, 2025.

4

5                                                    _____

6                                                    BRIAN A. TSUCHIDA
                                                     United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 18